526 May 8, 2024 No. 306

IN THE COURT OF APPEALS OF THE
STATE OF OREGON

STATE OF OREGON,
*Plaintiff-Respondent,*
*v.*
PAGE LEE BUTTERFIELD,
*Defendant-Appellant.*
Linn County Circuit Court
19CR34494; A175927

Thomas McHill, Judge.

Argued and submitted February 27, 2023.

Neil F. Byl, Deputy Public Defender, argued the cause for appellant. Also on the briefs was Ernest G. Lannet, Chief Defender, Criminal Appellate Section, Office of Public Defense Services.

Michael A. Casper, Assistant Attorney General, argued the cause for respondent. Also on the brief were Ellen F. Rosenblum, Attorney General, and Benjamin Gutman, Solicitor General.

Before Ortega, Presiding Judge, Powers, Judge and Hellman, Judge.

HELLMAN, J.

Count 1 reversed and remanded; remanded for resentencing; otherwise affirmed.

**HELLMAN, J.**

Defendant appeals from a judgment of conviction for second-degree murder, ORS 163.115 (Count 1), second-degree assault, ORS 163.175 (Count 3), and felon in possession of a firearm, ORS 166.270 (Count 4). On appeal, defendant raises four assignments of error concerning his convictions for second-degree murder and second-degree assault. In the first two, defendant challenges the trial court's denial of his motions for judgment of acquittal (MJOAs), arguing that the state did not adduce evidence sufficient for a rational trier of fact to find that the state disproved defendant's claim of self-defense beyond a reasonable doubt. In the third and fourth, defendant asserts that the trial court incorrectly instructed itself on the elements of his self-defense claim.

We reject defendant's first and second assignments of error. However, as to his third and fourth, we agree that the trial court incorrectly instructed itself on the elements of third-degree robbery when determining whether defendant's actions against the two people that he shot, C and L, were justified by self-defense under ORS 161.219(1).[1] We further conclude that the trial court's error was harmless as it relates to defendant's conviction for second-degree assault, but not harmless as it relates to defendant's conviction for second-degree murder. Accordingly, we reverse and remand defendant's conviction for second-degree murder, remand for resentencing, and otherwise affirm.

## I.  FACTUAL AND PROCEDURAL OVERVIEW

We briefly set out the historical and procedural facts of the case here for context. We discuss the parties' trial arguments and the trial court's rulings in more detail in our analysis of defendant's assignments of error.

---

[1] The parties do not dispute that defendant used deadly physical force against C and L when he shot them, thus implicating ORS 161.219. "'Deadly physical force' means physical force that under the circumstances in which it is used is readily capable of causing death or serious physical injury." ORS 161.015(3).

The parties also do not dispute that third-degree robbery, ORS 164.395, qualifies as "a felony involving the use or threatened imminent use of physical force against a person," for purposes of determining whether defendant's use of deadly force in self-defense was justified by C and L committing a qualifying felony against him. ORS 161.219(1).

L lived in a small camp trailer that had a main room and a bedroom. Around 1:30 a.m. on May 24, 2019, defendant met C and C's friend, A, at L's trailer for a drug transaction. Defendant did not know L or A, and C did not inform L in advance that he would be bringing strangers to L's trailer for a drug exchange. L yelled at C for bringing people to his home without permission, asked them to "finish up what you're gonna do and I'm going back to bed, get the hell outta here," and returned to his bedroom.

The camp trailer was dimly lit only by a flashlight. C, A, and defendant sat in the main room and talked for about 20 minutes while smoking methamphetamine before defendant presented Adderall pills for sale.

Soon after, C became agitated and confronted defendant. Around 2:15 a.m., C angrily accused defendant of being a liar. C clenched his hands and stood above defendant, who was seated in a chair with his back to the front door. Defendant was "scared" and told C, "I wouldn't do that to you[.]" C punched defendant in the face, said "Get up, you bitch," and kicked defendant's backpack toward A, saying, "You're leaving with nothing, motherfucker."[2] During the ensuing "scramble," defendant stood and pointed a gun at C as C charged defendant with his head down, wrapping his arms around defendant "like he was trying to take him down to the ground." Defendant fatally shot C in the back of the head.

At some point after defendant shot C, L came out from his bedroom and hit defendant in an effort to get defendant out of his trailer. Defendant exited the trailer, and L tried to hit him again. Defendant then turned and shot L in the neck. Defendant fled the scene by vehicle, leaving behind his backpack and drug paraphernalia.

A contacted 9-1-1 around 2:30 a.m. and police arrived within minutes. Responding officers found L outside the trailer, conscious, and C deceased inside the trailer. Defendant was apprehended two days later.

_____

[2] While accounts differ about whether C kicked the backpack or punched defendant first, the record reflects that both events occurred. We have determined that, for the purposes of our analysis, the sequence of those events does not affect the outcome.

The state charged defendant with second-degree murder of C and attempted murder and second-degree assault of L, as well as felon in possession of a firearm and unauthorized use of a vehicle. Before trial, defendant filed a notice of his intent to rely on self-defense. *See* ORS 161.055 (the state has the burden of disproving a defense beyond a reasonable doubt when a defendant raises the defense by providing written pretrial notice to the state).

Defendant waived his right to a trial by jury. The bench trial took place over five days. At the end of the state's case-in-chief, defendant moved for a judgment of acquittal for second-degree murder, attempted murder, and second-degree assault on the basis that he was justified in using deadly force against C and L in self-defense because they were committing a felony robbery and/or a felony assault against him. *See* ORS 161.209 (governing when a person is justified in using physical force upon another person in self-defense) and ORS 161.219 (governing when a person is justified in using deadly physical force in self-defense). The court denied defendant's MJOAs and found defendant guilty of second-degree murder for his actions against C, second-degree assault with a firearm for his actions against L, and being a felon in possession of a firearm. Defendant timely appealed.

## II.   OVERVIEW OF LEGAL FRAMEWORK

Under ORS 161.209,

"a person is justified in using physical force upon another person for self-defense *** from what the person reasonably believes to be the use or imminent use of unlawful physical force, and the person may use a degree of force which the person reasonably believes to be necessary for the purpose."

"[O]nce self-defense has been raised by a defendant, the state has the burden of disproving it beyond a reasonable doubt." *State v. Oliphant*, 347 Or 175, 190-91, 218 P3d 1281 (2009) (citing ORS 161.055). To determine whether the state has met that burden, a factfinder must weigh "(1) whether the defendant reasonably believed that the victim used or threatened to use unlawful physical force against the defendant; and (2) whether the defendant used a degree of force

in self-defense that the defendant reasonably believed was necessary." *State v. Poitra*, 261 Or App 818, 820-21, 323 P3d 563 (2014).

ORS 161.219 expressly limits the use of deadly force in self-defense to certain circumstances, "one of which is when the person reasonably believes that someone is '[c]ommitting or attempting to commit a felony involving the use or threatened imminent use of physical force against a person.'"[3] *State v. Cox*, 329 Or App 228, 231-32, 540 P3d 36 (2023) (quoting ORS 161.219(1)). A factfinder "looks to the 'precise moment in which [the] defendant acted' to determine whether the use of deadly force was reasonably necessary, *i.e.*, 'at the moment he *fired* the gun.'" *Cox*, 329 Or App at 234 (quoting *State v. Harryman*, 277 Or App 346, 359, 371 P3d 1213, *rev den*, 360 Or 401 (2016) (emphasis in *Cox*)).

"The legal standard for assessing the reasonableness of a person's belief about the need for force or the extent of force necessary turns on an objective evaluation of the circumstances in which physical force has been used or threatened, and not on the personal perceptions of the individual defendant.'" *State v. Strickland*, 303 Or App 240, 244, 463 P3d 537, *rev den*, 366 Or 827 (2020) (emphasis omitted). The question is therefore "how a reasonable person would have assessed the circumstances in which defendant found himself at the time * * *." *Id.*

It follows that for defendant to have lawfully used deadly force against C and L in self-defense, he must have "reasonably believe[d] that the [person harmed] was '[c]ommitting or attempting to commit a felony involving the use or threatened imminent use of physical force against [him],'" ORS 161.219(1), and that 'the degree of force' that

---

[3] ORS 161.219 provides in full:

"Notwithstanding the provisions of ORS 161.209, a person is not justified in using deadly physical force upon another person unless the person reasonably believes that the other person is:

"(1) Committing or attempting to commit a felony involving the use or threatened imminent use of physical force against a person; or

"(2) Committing or attempting to commit a burglary in a dwelling; or

"(3) Using or about to use unlawful deadly physical force against a person."

defendant used was 'necessary' to defend himself, ORS 161.209." *Cox*, 329 Or App at 234.

## III.   ANALYSIS

A.   *The trial court did not err when it denied defendant's MJOAs.*

We turn to defendant's first two assignments of error, in which he asserts that the trial court erred in denying the MJOAs for second-degree murder and second-degree assault. Specifically, defendant argues that the state did not meet its burden to disprove his self-defense claim under ORS 161.219(1) because the state proffered insufficient evidence to disprove that defendant reasonably believed that C and L were committing a felony robbery or assault against him.

"We review the denial of an MJOA to determine whether, after viewing the facts in the light most favorable to the state, a rational trier of fact could have found the essential elements of the crime proved beyond a reasonable doubt." *State v. Spears*, 223 Or App 675, 677, 196 P3d 1037 (2008) (citing *State v. Cunningham*, 320 Or 47, 63, 880 P2d 431 (1994), *cert den*, 514 US 1005 (1995)). Because the parties do not dispute that defendant properly raised self-defense and the burden rests with the state to disprove self-defense beyond a reasonable doubt, the question is whether "evidence was sufficient for a rational [factfinder] to find that defendant did not act in lawful self-defense." *Cox*, 329 Or App at 235. In this case, that question turns on whether a rational trier of fact could find: (1) that defendant did not reasonably believe that C and L were "[c]ommitting or attempting to commit a felony involving the use or threatened imminent use of physical force" against him pursuant to ORS 161.219(1), or (2) that the degree of force defendant used exceeded that which he reasonably believed was necessary for the purpose of self-defense pursuant to ORS 161.209. *See also Cox*, 329 Or App at 234-35.

Here, viewing the facts in the light most favorable to the state, we conclude that the trial court correctly denied defendant's MJOAs because a rational trier of fact could find that the state disproved the second element of self-defense.

That is, a rational factfinder could find that the degree of force that defendant used (discharging a firearm) exceeded that which he reasonably believed was necessary to defend himself against C and L, who were both unarmed. Such a finding would allow the trier of fact to determine that the state met its burden to disprove defendant's self-defense claim under the ORS 161.209 degree-of-force inquiry. *Spears*, 223 Or App at 677. And because the state meets its burden to disprove self-defense if it negates any element of the defense, we do not reach the merits of defendant's argument about whether C or L were committing a qualifying felony against him under ORS 161.219(1). Thus, we conclude that the trial court did not err in denying defendant's MJOAs for second-degree murder and second-degree assault.

When a defendant raises the defense of self-defense, their "subjective beliefs and their objective reasonableness are factual issues for the jury." *Cox*, 328 Or App at 235 (citing *Warren v. Baldwin*, 140 Or App 318, 333-34, 915 P2d 1016, *rev den*, 324 Or 229 (1996)); *see also State v. Laurel*, 4 Or App 122, 127, 476 P2d 817 (1970) (explaining that whether self-defense "was reasonable under all the circumstances was a question 'within the sole province of the jury in a criminal case'" (quoting *State v. Hansen*, 3 Or App 378, 384-85, 474 P2d 17 (1970))); *State v. Rader*, 94 Or 432, 454, 186 P 79 (1919) (explaining that "whether there was a real or apparent danger to the defendant of death or great bodily harm, is one of fact for the jury," and that "[w]hen the court assumes to apportion the amount of real or threatened danger, it invades the province of the jury"). As such, we recognize that it would be rare for a trial court to grant an MJOA based on the state's burden to disprove a self-defense claim: The record would have to compel the conclusion that the defendant's subjective belief was objectively reasonable. This is not one of those rare cases.

B.   *The trial court incorrectly instructed itself on what the state was required to disprove in defendant's self-defense claim.*

We turn to defendant's third and fourth assignments of error, in which he argues that the trial court incorrectly instructed itself on what the state was required to

disprove in defendant's self-defense claim. In a bench trial, a defendant's argument for the existence of an element of an offense or defense is the "functional equivalent of a challenge to jury instructions." *State v. Morgan*, 361 Or 47, 51-52, 388 P3d 1085 (2017); *see also State v. Colby*, 295 Or App 246, 252, 433 P3d 447 (2018) (explaining that "it is not uncommon" during a bench trial for a trial court "to receive proposed instructions from the parties *** and to instruct itself on the correct version of the law, thereby creating a record that allows us to review whether the court applied the correct principles of law in reaching its verdict"). Thus, as we would for a challenge to jury instructions, we review for legal error. *State v. Prophet*, 318 Or App 330, 332, 507 P3d 735, *rev den*, 370 Or 472 (2022).

Below, we conclude that the trial court did not err in instructing itself on the elements of ORS 161.219(1), nor in instructing itself on the elements of second-degree robbery or third-degree assault for purposes of ORS 161.219(1). However, we conclude that the trial court did err in instructing itself on the elements of third-degree robbery for purposes of ORS 161.219(1).

    1.   *The trial court did not err in instructing itself on the elements of ORS 161.219(1).*

We first address defendant's argument that the trial court incorrectly instructed itself on the elements of self-defense. Specifically, defendant argues that the trial court erred "in instructing itself that a completed assault was necessary under ORS 161.219(1)" because that statute allows the use of deadly force when a person "reasonably believes that the other person is *** [c]ommitting *or attempting* to commit a felony involving the use or threatened imminent use of physical force." (Emphasis added.) We understand defendant to base his argument on the following part of the trial court's speaking verdict:

"On the charge of Assault in the Fourth Degree [*sic*], the Court finds the Defendant guilty. Again, the Court specifically finds—

"[STATE]:   Assault in the Second Degree.

"THE COURT:    Assault in the Second, I'm sorry. What did I say?

"[STATE]:    Four.

"THE COURT:    *Quite frankly, the injuries that are purported in the photographs of the Defendant probably don't even establish physical injury, quite frankly from the Court's perspective. Any wounds on the arms, there's no evidence about causation, and he didn't know where it came from. And as far as the, looked like a mouse on \*\*\* his face, I don't think there's any evidence that that would even constitute physical injury, if that was the charge on the case. Anyway, thank you for \*\*\* catching that.*

"On the charge of Assault in the Second Degree, the Court finds the Defendant guilty. Specifically, I find beyond a reasonable doubt the defense of defense of person does not apply on this count and the State has met its burden."

(Emphasis added.)

While we agree with defendant that ORS 161.219(1) includes attempted felonies, we do not agree that the trial court's statement was an incorrect legal ruling. Considered in context, the trial court's comment about the lack of evidence of physical injury was not a determination that there had to be a completed assault before defendant could claim self-defense. The statement upon which defendant relies was made after the trial court had correctly stated the legal standard under ORS 161.219(1); indicated that it had reviewed the jury instructions that were submitted prior to trial for first-, second-, and third-degree robbery, as well as first- and second-degree assault, to determine whether the facts "added up to a situation where there was justification"; and provided a detailed explanation as to why defendant's self-defense claim could not lie in any of those crimes. That detailed explanation was unrelated to whether defendant had suffered physical injury.[4] In context, then, the trial court's statement that the evidence did not show

_____

[4] Specifically, the trial court determined that defendant's self-defense claim did not lie in first-degree robbery or second-degree assault because neither C nor L had dangerous weapons; in second-degree robbery because nobody was present and "acted with the intent to facilitate the robbery"; in third-degree robbery "for those same reasons" as first- and second-degree robbery; or in third-degree assault because, "[a]gain, I don't see any evidence in this case that anyone was aiding." We discuss the trial court's determinations in more detail below.

that defendant experienced physical injury is best read as an extraneous comment on the evidence, not as a dispositive factual finding or legal ruling. We therefore conclude that the trial court did not commit legal error in instructing itself on the elements of ORS 161.219(1).

> 2.   *The trial court did not err in instructing itself on the elements of second-degree robbery or third-degree assault for purposes of ORS 161.219(1).*

In defendant's opening brief, he argues that the trial court incorrectly instructed itself on what being "aided by another person actually present" means for purposes of second-degree robbery or third-degree assault, such that the court erred in concluding that defendant's use of deadly force in self-defense was not justified under ORS 161.219(1). *See* ORS 164.405(1)(b); ORS 163.165(1)(e). The state responds that the trial court did not err, citing *Morgan*, 361 Or 47. In reply, defendant agrees with the state as to the applicability of *Morgan*. We likewise agree that *Morgan* applies and conclude without discussion that the trial court did not err in instructing itself as to the elements of second-degree robbery and third-degree assault. *See id.* at 49 (holding that "to establish that defendant was 'aided by another person actually present' and therefore was guilty of second-degree robbery under ORS 164.405(1)(b), the state was required to prove that the person who aided defendant acted with the intent to facilitate the robbery"); *State v. Hesedahl*, 247 Or App 285, 290, 269 P3d 90 (2011), *rev den*, 351 Or 649 (2012) (explaining that ORS 164.405(1)(b) "provide[s] useful context" to interpret the meaning of "aided by another person actually present" in ORS 163.165(1)(e)).

> 3.   *The trial court erred in instructing itself on the elements of third-degree robbery for purposes of ORS 161.219(1).*

Finally, we turn to defendant's argument that the trial court erred in instructing itself on the elements of third-degree robbery for purposes of determining whether defendant's actions against C and L were justified by self-defense under ORS 161.219(1). Defendant argues that the instructional error led the trial court to incorrectly determine that

the state carried its burden to disprove self-defense beyond a reasonable doubt.[5] After a review for legal error, *Prophet*, 318 Or App at 332, we agree.

Defendant argues that the trial court erred in relying upon an element of second-degree robbery, that the person committing the crime "[i]s aided by another person actually present[,]" ORS 164.405(1)(b),[6] to find that defendant did not reasonably believe that C was attempting to commit third-degree robbery, ORS 164.395, which does not include that element.[7] *See State v. Hall*, 327 Or 568, 573-74, 966 P2d

---

[5] We reject the state's argument that the issue is unpreserved. At trial, both parties presented and relied upon the correct legal framework for third-degree robbery as set forth in ORS 164.395, and the trial court stated that it was relying on submitted jury instructions when it made its determination. *State v. Sells*, 324 Or App 29, 36, 524 P3d 517, *rev den*, 371 Or 308 (2023) (explaining that "[a] n objection is not the only method by which a defendant may preserve an argument for appeal"); *State v. Satterfield*, 274 Or App 756, 759, 362 P3d 728 (2015), *rev den*, 358 Or 794 (2016) (where defense counsel's argument throughout trial was consistent with his argument on appeal and where his closing argument "[drew] the court's attention to the correct rule," the argument was preserved); *State v. Andrews*, 174 Or App 354, 359, 27 P3d 137 (2001), *abrogated in part on other grounds by State v. Rutley*, 202 Or App 639, 644-45, 123 P3d 334 (2005), *aff'd in part and rev'd in part*, 343 Or 368, 171 P3d 361 (2007) (concluding that the defendant preserved a challenge for review where, during closing argument in a bench trial, the "defendant raised the precise [legal] matter *** disputed on appeal—whether the state must prove a culpable mental state" and the trial court's ruling "constituted a clear expression of the trial court's understanding of the elements needed for the state to convict [the] defendant" (internal quotation marks omitted)).

[6] Under ORS 164.405,

"(1) A person commits the crime of robbery in the second degree if the person violates ORS 164.395 and the person:

"(a) Represents by word or conduct that the person is armed with what purports to be a dangerous or deadly weapon; or

"(b) Is aided by another person actually present.

"(2) Robbery in the second degree is a Class B felony."

[7] ORS 164.395 provides:

"(1) A person commits the crime of robbery in the third degree if in the course of committing or attempting to commit theft or unauthorized use of a vehicle as defined in ORS 164.135 the person uses or threatens the immediate use of physical force upon another person with the intent of:

"(a) Preventing or overcoming resistance to the taking of the property or to retention thereof immediately after the taking; or

"(b) Compelling the owner of such property or another person to deliver the property or to engage in other conduct which might aid in the commission of the theft or unauthorized use of a vehicle.

"(2) Robbery in the third degree is a Class C felony."

208 (1998) ("ORS 164.395(1) requires that, in the course of committing or attempting to commit theft, a defendant use or threaten to use immediate physical force on another person with the intent of preventing or overcoming resistance to the taking of property or compelling the person to deliver property.").

We agree that the trial court erred in instructing itself on the elements of third-degree robbery and, consequently, erred in concluding that the state had disproven that defendant reasonably believed that C was "[c]ommitting or attempting to commit a felony involving the use or threatened imminent use of physical force against" defendant under ORS 161.219(1). During the trial court's speaking verdict, it recited, in relevant part:

> "Robbery I is defined as in the course of attempting to commit theft, the person uses physical force on another person with the intent of preventing or overcoming resistance to his taking of some property, and the person used or attempted to use a dangerous weapon.[8]

> "[In] [t]his case, I'm convinced that neither [C] nor [L] had any dangerous weapons. ***** So, I don't find *** that self-defense lies on Robbery I.

> "Robbery II, in the course of attempting to commit the theft, a person uses physical force on another person with the intent of preventing or overcoming resistance to his taking of the property *and the person is aided by another person, actually present, who acted with the intent to facilitate the robbery. Again, I don't find that there was anybody there who facilitated a robbery.* There's evidence that a backpack got kicked during the altercation, and that's all that the Court has to determine whether or not there was a taking of the backpack. And that's not sufficient for the Court to conclude that either [A] or [L] were aiding anybody in facilitating a robbery of this case.

---

[8] Under ORS 164.415,

"(1) A person commits the crime of robbery in the first degree if the person violates ORS 164.395 and the person:

"(a) Is armed with a deadly weapon;

"(b) Uses or attempts to use a dangerous weapon; or

"(c) Causes or attempts to cause serious physical injury to any person.

"(2) Robbery in the first degree is a Class A felony."

"Robbery III, in the course of attempting to commit theft, the person uses physical force on another person with the intent of preventing or overcoming resistance to his taking of the property. *And for those same reasons, I don't find that Robbery III has—is supported by the evidence that would support the self-defense.*"

(Emphases added.)

We are mindful that we must consider statements made during a trial court's speaking verdict "in the context of the parties' arguments and the ruling as a whole." *State v. Spieler*, 302 Or App 432, 439, 460 P3d 535 (2020). To do so, we must "tak[e] into account the circumstances in which the court made its observations and the extent to which the court's explanation of its verdict sheds light on how it viewed the evidence." *State v. Reed*, 299 Or App 675, 689, 452 P3d 995 (2019), *rev den*, 366 Or 382 (2020). We further acknowledge that the trial court expressly stated that it was applying the jury instructions that defendant proposed, and that, in presenting its verdict concerning third-degree robbery, the trial court began by correctly explaining that under third-degree robbery, "in the course of attempting to commit theft, the person uses physical force on another person with the intent of preventing or overcoming resistance to his taking of the property."

However, the court then explicitly decided whether defendant's use of deadly force could be justified by C engaging in third-degree robbery against defendant based on "those same reasons" already discussed, reasons that pertain to an element that is not in the statute for third-degree robbery. In so stating, the trial court necessarily introduced and centered its decision on an element not required for ORS 164.395.

We reject the state's argument that the trial court determined that defendant's self-defense claim was not justified by third-degree robbery because C did not take defendant's backpack. When viewed in context, the statement, "[t]here's evidence that a backpack got kicked during the altercation, and that's all that the Court has to determine whether or not there was a taking of the backpack," was not an independent finding. Instead, it was an interwoven part

of the trial court's determination as to why it was "not suffi-cient for the Court to conclude that either [A] or [L] were aid-ing anybody in facilitating a robbery of this case." Moreover, the trial court did not single out the statement about the backpack in its verdict with respect to third-degree rob-bery. Instead, the court rejected defendant's self-defense theory involving third-degree robbery for "*those* same rea-sons," referring to the entire earlier statement in which it explained its finding that neither A nor L were aiding any-one in committing a robbery.

Based on the speaking verdict, we understand that the trial court concluded that defendant could not have rea-sonably believed that C was engaging in third-degree rob-bery against defendant at the time defendant used deadly force based on one of the reasons that the trial court had already discussed: (1) that neither C nor L used a danger-ous weapon, as the court found with regard to defendant's self-defense theory involving first-degree robbery, or (2) that neither L nor A "facilitated" or aided in a robbery by C, as the court found with regard to defendant's self-defense the-ory involving second-degree robbery. Third-degree robbery does not include either of those elements, and thus, they are not elements of defendant's self-defense claim that the state had to disprove. When the trial court incorporated those ele-ments into its ruling, it incorrectly instructed itself on the elements of third-degree robbery as related to self-defense. It therefore erred in convicting defendant of second-degree murder degree robbery as related to defendant's self-defense claim \*\*\*.

C.  *The trial court's error in instructing itself on the ele-ments of third-degree robbery was harmless as it relates to defendant's conviction on Count 3. It was not harmless as it relates to defendant's conviction on Count 1.*

"Errors that had little likelihood of affecting the verdict are harmless and do not warrant reversal." *State v. Black*, 364 Or 579, 595-96, 437 P3d 1121 (2019) (internal quotation marks omitted); *see also State v. Zamora-Skaar*, 308 Or App 337, 353, 480 P3d 1034 (2020) (explaining that where a party asserts that, in a bench trial, the trial court applied an incorrect legal standard in considering whether

they had established an affirmative defense, "we review both to determine whether the court instructed itself incorrectly regarding the law and whether any erroneous self-instruction was harmless"). "An error is less likely to be harmless where it relates to a central factual issue in the case." *Black*, 364 Or at 596. We address Count 3 and Count 1 separately.

We first conclude that any error that the trial court made in instructing itself on the elements of third-degree robbery was harmless as it relates to defendant's conviction for second-degree assault (Count 3). During the trial court's speaking verdict, it determined that there were two separate incidents: (1) defendant's altercation with C; and (2) L hitting defendant in an effort to get defendant out of the trailer. The record does not support that when L hit defendant, L was committing or attempting to commit theft, and we do not understand defendant to so argue. Instead, we understand defendant to be treating C and L's actions as one continuous event.[9] That position is contrary to the facts as found by the trial court, which defendant does not challenge on appeal. Because theft and robbery are unrelated to the actions L took against defendant, the court's error in self-instruction was harmless as to Count 3.[10]

However, we conclude that the trial court's error in instructing itself on the elements of third-degree robbery was not harmless as it relates to defendant's conviction for second-degree murder (Count 1). As we have described, for defendant's use of deadly force against C to be justified by self-defense, defendant must have "reasonably believe[d] that [C] was '[c]ommitting or attempting to commit a felony involving the use or threatened imminent use of physical force against a person,' ORS 161.219(1), and that 'the degree of force' that defendant used was 'necessary' to defend

---

[9] We recognize that in a footnote in defendant's reply brief, related to whether the court erred in denying defendant's MJOA for second-degree assault of L, defendant maintains that it was reasonable for him to believe that L intended to complete the robbery that C had started by assaulting defendant, and that the state adduced insufficient evidence to disprove that fact. That footnote does not amount to a challenge to the trial court's speaking-verdict conclusion that defendant's actions against C and L were separate instances.

[10] To the extent that defendant argues that his use of deadly physical force against *L* was justified under ORS 161.219 by *C* committing third-degree robbery against defendant, we reject that argument without further discussion.

himself, ORS 161.209." *Cox*, 329 Or App at 234-35. Here, the trial court determined, based on an incorrect instruction on the elements of the crime, that defendant's use of deadly force in self-defense was not justified by C committing third-degree robbery against him. The error "relates to a central factual issue in the case." *Black*, 364 Or at 596. Had the trial court applied the correct legal standard, "[t]here is at least some possibility that [the court as factfinder] might not have been persuaded" that defendant did not act in self-defense. *State v. Horton*, 327 Or App 256, 263-64, 535 P3d 338 (2023). We therefore conclude that the trial court's error in instructing itself as to the elements of third-degree robbery was not harmless with regard to Count 1.

D.   *The proper remedy is remand for a retrial on Count 1.*

We turn to the proper remedy. The state, citing *Colby*, 295 Or App 246, argues that "to the extent the record is insufficient to determine whether the trial court also implicitly found that the degree of force that defendant used was unjustified under ORS 161.209, the appropriate remedy might be to remand for the court to clarify its ruling." Defendant, citing *Hansen*, 3 Or App 378, replies that the proper remedy under the circumstances would be to reverse and remand for a retrial "so a factfinder can determine in the first instance whether defendant's response to the robbery was reasonable." We agree with defendant.

This is not a situation like *Colby*, 295 Or App at 252-53, where the defendant specifically asked the court whether it was agreeing with the interpretation of the law as submitted in jury instructions, and the court, despite that request triggering its obligation to create a sufficient record, declined to "disclose its understanding of the law that it was applying to convict [the] defendant." Rather, in the present case, the court's conclusion was based on an incorrect self-instruction on the relevant law, and the court, as a result, did not reach a different, potentially dispositive issue.

In reaching its conclusion based on ORS 161.219(1), the trial court did not make factual findings pursuant to ORS 161.209 related to whether defendant used the degree

of force reasonably necessary under the circumstances. The state concedes that the trial court "explicitly based its ruling on ORS 161.219(1) and did not seem to reach ORS 161.209[,]" but we understand the state to argue that the trial court implicitly found that the degree of force used was not justified under ORS 161.209. While that is possible, it is also possible that the court did not make a factual finding on the ORS 161.209 degree-of force inquiry because it "erroneously believe[d]" that it did not need to resolve that issue after determining that the state met its burden to disprove defendant's self-defense claim under ORS 161.219. *State v. Karim*, 323 Or App 25, 29, 522 P3d 24 (2022) (concluding that a judgment should be reversed and remanded where the court incorrectly instructed itself, leading the court to "erroneously believe that" a dispositive fact did not matter and not make a factual finding on the issue). "Under the circumstances, the proper remedy is to reverse and remand for a new trial \*\*\*." *Id.* at 29-30; *State v. Sorrow*, 312 Or App 40, 46, 489 P3d 1127 (2021) (explaining that reversal and remand is required in a bench trial when the trial court "applies incorrect legal standard in reaching verdict" (citing *State v. Massey*, 249 Or App 689, 693-94, 278 P3d 130 (2012), *rev den*, 353 Or 203 (2013))).

## IV. CONCLUSION

In sum, the trial court did not err in denying defendant's MJOAs for second-degree murder and second-degree assault. However, we conclude that the trial court incorrectly instructed itself on the elements of third-degree robbery for purposes of deciding defendant's self-defense claim. That error was harmless as it relates to defendant's conviction for Count 3, but not harmless as it relates to his conviction for Count 1. Under our case law, the proper remedy is a remand for a retrial on Count 1.

Count 1 reversed and remanded; remanded for resentencing; otherwise affirmed.